1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RYAN LEE HUNTSMAN,

                Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

Case No. EDCV 13-1300 JC

MEMORANDUM OPINION

## I.  SUMMARY

On July 31, 2013, plaintiff Ryan Lee Huntsman ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; August 2, 2013 Case Management Order ¶ 5.

///
///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    In April 2010, plaintiff filed applications for Supplemental Security Income

7    and Disability Insurance Benefits.  (Administrative Record ("AR") 15, 138, 145).

8    Plaintiff asserted that he became disabled on September 1, 2009, due to recent

9    back surgery (lower back fusion), leg pain/instability, a neck bulging disc, severe

10   headaches, tingling and numbness in his hands, and severe pain and burning and

11   tingling in his back/neck/arms/legs.  (AR 167-68).  The ALJ examined the medical

12   record and heard testimony from plaintiff (who was represented by counsel) and a

13   vocational expert on February 14, 2012.  (AR 33-66).

14   On March 30, 2012, the ALJ determined that plaintiff was not disabled

15   through the date of the decision.  (AR 15-28).  Specifically, the ALJ found:

16   (1) plaintiff suffered from the following severe impairments:  disc disease of the

17   lumbar spine, disc disease of the cervical spine, history of bilateral shoulder

18   arthroscopic surgeries, right carpal tunnel syndrome, and obesity (AR 17);

19   (2) plaintiff's impairments, considered singly or in combination, did not meet or

20   medically equal a listed impairment (AR 18); (3) plaintiff retained the residual

21   functional capacity to perform less than the full range of light work (20 C.F.R.

22   §§ 404.1567(b), 416.967(b))[2] (AR 18); (4) plaintiff could not perform his past

23

24   [1]The harmless error rule applies to the review of administrative decisions regarding

25   disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of
     application of harmless error standard in social security cases) (citing, *inter alia*, Stout v.

26   Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

27   [2]The ALJ determined that plaintiff:  (i) could lift and carry 20 pounds occasionally and 10

28   pounds frequently; (ii) could stand and walk for six hours and sit for six hours in an eight-hour
     workday; (iii) required the use of an assistive device for ambulation of distances more than 20

                                                                          (continued...)

1   relevant work (AR 26); (5) there are jobs that exist in significant numbers in the
2   national economy that plaintiff could perform, specifically Cashier II and
3   Checker I (AR 27-28); and (6) plaintiff's allegations regarding his limitations were
4   not credible to the extent they were inconsistent with the ALJ's residual functional
5   capacity assessment (AR 21).

6          The Appeals Council denied plaintiff's application for review.  (AR 1).

7   **III.    APPLICABLE LEGAL STANDARDS**

8          **A.    Sequential Evaluation Process**

9          To qualify for disability benefits, a claimant must show that the claimant is
10  unable "to engage in any substantial gainful activity by reason of any medically
11  determinable physical or mental impairment which can be expected to result in
12  death or which has lasted or can be expected to last for a continuous period of not
13  less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)
14  (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The
15  impairment must render the claimant incapable of performing the work claimant
16  previously performed and incapable of performing any other substantial gainful
17  employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094,
18  1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

19         In assessing whether a claimant is disabled, an ALJ is to follow a five-step
20  sequential evaluation process:

21         (1)    Is the claimant presently engaged in substantial gainful activity?  If
22                so, the claimant is not disabled.  If not, proceed to step two.

23         (2)    Is the claimant's alleged impairment sufficiently severe to limit
24                the claimant's ability to work?  If not, the claimant is not
25                disabled.  If so, proceed to step three.

26  _____

27         [2](...continued)
28  feet; (iv) could occasionally climb, balance, stoop, kneel, crouch and crawl; and (v) could
    perform frequent handling and fingering with the right upper extremity.  (AR 18).

(3)     Does the claimant's impairment, or combination of
impairments, meet or equal an impairment listed in 20 C.F.R.
Part 404, Subpart P, Appendix 1?  If so, the claimant is
disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to
perform claimant's past relevant work?  If so, the claimant is
not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when
considered with the claimant's age, education, and work
experience, allow the claimant to adjust to other work that
exists in significant numbers in the national economy?  If so,
the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at
1110 (same).

The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch
v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of
proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal
error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
(9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."  Richardson v. Perales,
402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

4

1    mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

2    Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

3            To determine whether substantial evidence supports a finding, a court must

4    "'consider the record as a whole, weighing both evidence that supports and

5    evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

6    Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

7    953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

8    or reversing the ALJ's conclusion, a court may not substitute its judgment for that

9    of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

10   **IV.    DISCUSSION**

11           **A.     The ALJ Properly Evaluated the Opinions of Plaintiff's Treating**

12                   **Physician**

13                   **1.     Pertinent Law**

14           In Social Security cases, courts employ a hierarchy of deference to medical

15   opinions depending on the nature of the services provided.  Courts distinguish

16   among the opinions of three types of physicians:  those who treat the claimant

17   ("treating physicians") and two categories of "nontreating physicians," namely

18   those who examine but do not treat the claimant ("examining physicians") and

19   those who neither examine nor treat the claimant ("nonexamining physicians").

20   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

21   treating physician's opinion is entitled to more weight than an examining

22   physician's opinion, and an examining physician's opinion is entitled to more

23   weight than a nonexamining physician's opinion.[3]  See id.  In general, the opinion

24   of a treating physician is entitled to greater weight than that of a non-treating

25

26           [3]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to
27   draw bright line distinguishing treating physicians from non-treating physicians; relationship is
     better viewed as series of points on a continuum reflecting the duration of the treatment
28   relationship and frequency and nature of the contact) (citation omitted).

1  physician because the treating physician "is employed to cure and has a greater

2  opportunity to know and observe the patient as an individual." Morgan v.

3  Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

4  1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

5      The treating physician's opinion is not, however, necessarily conclusive as

6  to either a physical condition or the ultimate issue of disability. Magallanes v.

7  Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

8  759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not

9  contradicted by another doctor, it may be rejected only for clear and convincing

10  reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

11  quotations omitted).  The ALJ can reject the opinion of a treating physician in

12  favor of another conflicting medical opinion, if the ALJ makes findings setting

13  forth specific, legitimate reasons for doing so that are based on substantial

14  evidence in the record. Id. (citation and internal quotations omitted); Thomas v.

15  Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out

16  detailed and thorough summary of facts and conflicting clinical evidence, stating

17  his interpretation thereof, and making findings) (citations and quotations omitted);

18  Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to

19  reject a treating physician opinion – court may draw specific and legitimate

20  inferences from ALJ's opinion).  "The ALJ must do more than offer his

21  conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must

22  set forth his own interpretations and explain why they, rather than the

23  [physician's], are correct." Id.  "Broad and vague" reasons for rejecting the

24  treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599,

25  602 (9th Cir. 1989).

26      ## 2.    Analysis

27      Plaintiff contends that the ALJ improperly rejected the opinions expressed

28  by Dr. Michael Kropf, plaintiff's treating physician, in a June 21, 2011 Medical

6

Source Statement – specifically that plaintiff had significant functional limitations which would prevent him from performing even sedentary work[4] ("Dr. Kropf's Opinions"). (Plaintiff's Motion at 3-9) (citing AR 468-69). A remand or reversal is not warranted on this basis because the ALJ properly rejected Dr. Kropf's Opinions for clear and convincing, specific and legitimate reasons supported by substantial evidence.

First, the June 21, 2011 Medical Source Statement basically contained only check-the-box opinions. (AR 468-69). As the ALJ noted, Dr. Kropf did not explain any of the objective bases for his opinions that plaintiff had disabling functional limitations. (AR 26) (citing Exhibit 19 [AR 468-69])). In fact, Dr. Kropf did not reference any medically acceptable clinical or laboratory diagnostic findings – either his own or from another doctor – to support his opinions. (AR 26, 468-69). The ALJ properly rejected Dr. Kropf's Opinions on this basis alone. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) ("ALJ [] permissibly rejected [psychological evaluation forms] because they were check-off reports that did not contain any explanation of the bases of their conclusions."); see also De Guzman v. Astrue, 343 Fed. Appx. 201, 209 (9th Cir. 2009) (ALJ "is free to reject 'check-off reports that d[o] not contain any explanation of the bases of their conclusions.'") (citing id.); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

---

[4]In the Medical Source Statement, Dr. Kropf diagnosed plaintiff with status post L4-L5 posterior spinal fusion, status post L5-S1 posterior spinal fusion with removal of hardware, and cervical pain, and opined that plaintiff (i) could sit for four hours and stand/walk for two hours in an eight-hour day; (ii) could lift less than 10 pounds occasionally and 10 pounds rarely; (iii) needed to use a cane, walker or other assistive device while engaging in occasional standing/walking; (iv) could not stoop, push or kneel, and could not do prolonged standing or walking, repetitive reaching, or prolonged fixed positioning of the neck; and (v) would likely be absent from work about once per month due to plaintiff's impairments or treatment. (AR 468-69).

To the extent plaintiff suggests that Dr. Kropf adequately supported his opinions, in part, by "not[ing] the diagnostic finding of status post pedicle screw fixation [] at both L4-L5 and L5-S1 of the lumbar spine, and that removal of hardware [] was required" (Plaintiff's Motion at 5) (citing AR 468), the record belies plaintiff's suggestion.  Dr. Kropf did not identify in the "objective findings" section of the Medical Source Statement the results of any specific medically acceptable clinical or laboratory *testing* which supported the treating physician's diagnosis or his opinions regarding plaintiff's functional abilities.  (AR 468). Plaintiff also asserts that Dr. Kropf's assessment of plaintiff's cervical pain "did rely on acceptable clinical or diagnostic findings" essentially because Dr. Kropf considered the results of a May 12, 2010 multilevel provocative cervical discography of plaintiff ("May 12 discogram") which, according to plaintiff, "seemed to reproduce [plaintiff's] pain at C2-3."  (Plaintiff's Motion at 5-6) (citing AR 304-05, 334).  A May 20, 2010 treatment note suggests that Dr. Kropf did evaluate the May 12 discogram.  (AR 334).  The Court cannot conclude, however, that the results of the May 12 discogram, or Dr. Kropf's evaluation thereof, constitute substantial evidence supporting Dr. Kropf's Opinions that plaintiff suffered from disabling functional limitations.  As the ALJ noted, all of the results of the May 12 discogram were negative except the discography at C2-C3 which was "equivocal," and the reproduction of plaintiff's upper neck pain and headaches was "coincidental[]."  (AR 24) (citing Exhibit 3F at 37-38 [AR 304-05]).  Moreover, Dr. Kropf essentially found the results of the May 12 discogram to be inconclusive – noting that the discography at C2-3 level only "*seemed* to reproduce *some* of [plaintiff's] pain," and concluding that the results of the testing were insufficient to "make a definite recommendation with respect to surgical intervention."  (AR 334) (emphasis added).

Second, an ALJ may properly reject a treating physician's opinions where, like here, they are inconsistent with the physician's own notes or the record as a

8

1  whole.  <u>See</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ

2  need not accept the opinion of any physician, including a treating physician, if that

3  opinion is brief, conclusory, and inadequately supported by clinical findings.")

4  (citation and internal quotation marks omitted); <u>Connett v. Barnhart</u>, 340 F.3d 871,

5  875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating

6  physician's treatment notes "provide no basis for the functional restrictions he

7  opined should be imposed on [the claimant]").  Here, the ALJ noted that, contrary

8  to Dr. Kropf's opinions that plaintiff had disabling limitations, Dr. Kropf's

9  treatment notes for plaintiff, and the record as a whole, generally reflect

10  (1) progressive improvement in plaintiff's back condition after spinal surgery;

11  (2) only mild pathology in plaintiff's cervical spine (as well as post-surgery

12  healing in plaintiff's lumbar spine); and (3) the use of mostly relatively mild

13  medication and other conservative methods to treat plaintiff's alleged pain.  (AR

14  26).

15        For example, the decision includes a lengthy and detailed discussion of Dr.

16  Kropf's treatment records for plaintiff which, as the ALJ noted, reflect that

17  plaintiff's overall back condition progressively improved after the February 22,

18  2010 surgery with limited need for more than conservative treatment.  (AR 22-25).

19  More specifically, as the ALJ noted, less than a month after plaintiff's spinal

20  surgery, plaintiff described his pain level as only a "five on a [] scale of one to

21  ten."  (AR 23 (citing Exhibit 5F at 6 [AR 338]); <u>see also</u> Exhibit 18F at 15 [AR

22  466], Exhibit 21F at 35 [AR 526]).[5]  At the time, Dr. Kropf advised plaintiff to

23  "increase his activities as tolerated" and "slowly wean himself off [his] walker."

24  (AR 23, 338, 466, 526).  In July 2010 plaintiff still reported thoracic and cervical

25  pain with headaches, but noted that he was "off all his pain medication" and that

26

27

28        [5]The medical record contains several duplicates of Dr. Kropf's treatment notes as well as other medical records.

9

1  chiropractic treatment for his cervical spine had helped relieve the headaches for

2  seven days; Dr. Kropf advised plaintiff that he could stop using a back brace and

3  should begin physical therapy.  (AR 24, 460, 520).  In October 2010, plaintiff still

4  had pain in his thoracic and cervical spines and weakness in his lumbar spine.

5  (AR 459, 519).  However, Dr. Kropf noted that plaintiff had been off all pain

6  medication "for a significant time," but in light of plaintiff's continued complaints

7  of pain, he prescribed Norco to be taken "minimally" if plaintiff's pain increased.

8  (AR 459, 519).  Dr. Kropf also recommended acupuncture and advised plaintiff to

9  "restrict[] his movements" and "[not] work in construction. . . ."  (AR 459, 519).

10  By February 2011 plaintiff reported extreme neck pain, moderate and intermittent

11  lumbar pain with tingling, and decreased thoracic pain.  (AR 458).  Nonetheless, at

12  the time, plaintiff reported taking only Advil and Norco for pain, and Dr. Kropf

13  recommended no change in treatment.  (AR 458).  Although plaintiff was

14  administered trigger point injections at his cervical spine on three occasions –

15  specifically, April 10, 2010, October 17, 2011, and December 1, 2011 (AR 24-25,

16  337, 472-75) – there is no record that such treatment was ineffective.  To the

17  extent plaintiff suggests that the medical evidence does not reflect significant post-

18  surgery improvement (Plaintiff's Motion at 5-9), this Court will not second-guess

19  the ALJ's reasonable determination that it does not, even if such evidence could

20  give rise to inferences more favorable to plaintiff.  See Robbins, 466 F.3d at 882

21  (citation omitted).

22      In addition, as discussed above, the ALJ noted that the May 12 discogram,

23  at most, showed "equivocal" discography at C2-3.  (AR 24) (citing Exhibit 3F at

24  37-38 [AR 304-05]).  The same day, a postoperative CT scan of plaintiff's cervical

25  spine revealed that the C3-C4, C4-C5 and C5-C6 discograms were essentially

26  normal, and that at C2-C3 the contrast had been injected "outside the nucleus

27  pulposis."  (AR 24) (citing Exhibit 3F at 48 [AR 315]).  A May 25, 2010 MRI of

28  plaintiff's cervical spine was "unremarkable."  (AR 24) (citing Exhibit 5F at 33

[AR 365]).  In July, Dr. Kropf opined that x-rays of plaintiff's lumbar spine "reveal[ed] a healed fusion."  (AR 460).

Moreover, as discussed in more detail below, plaintiff's treatment eventually consisted mostly of chiropractic treatment, acupuncture, and "relatively mild" prescription pain medication.  (AR 20, 24-25, 458).

Third, the ALJ properly rejected Dr. Kropf's conclusory statements that plaintiff should "continue temporary disability" and that plaintiff was "unable to continue to work in construction."  (AR 26, 343, 459); see Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Non-medical opinions that plaintiff is disabled or unable to work are not binding on the Commissioner.  See Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008) ("[The] determination of a claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance."); Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted); 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . .  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 20 C.F.R. § 416.927(d)(1) (same).

Finally, the ALJ properly rejected Dr. Kropf's Opinions in favor of the conflicting opinions of the reviewing physicians – both of whom found no functional limitations beyond those already accounted for in the ALJ's residual functional capacity assessment.  (AR 18, 25, 406-12, 435-37).  The opinions of the state agency reviewing physicians constitute substantial evidence supporting the ALJ's decision since they are supported by the medical record as a whole and are consistent with it.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)

11

1  ("reports of the nonexamining advisor need not be discounted and may serve as
2  substantial evidence when they are supported by other evidence in the record and
3  are consistent with it").  Any conflict in the properly supported medical opinion
4  evidence is the sole province of the ALJ to resolve.  Andrews, 53 F.3d at 1041.

5        Accordingly, a remand or reversal on this basis is not warranted.

6        **B.    The ALJ Properly Evaluated Plaintiff's Credibility**

7              **1.    Pertinent Law**

8        Questions of credibility and resolutions of conflicts in the testimony are
9  functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th
10 Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable
11 and is supported by substantial evidence, it is not the court's role to "second-
12 guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

13       An ALJ is not required to believe every allegation of disabling pain or other
14 non-exertional impairment.  Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d
15 597, 603 (9th Cir. 1989)).  If the record establishes the existence of a medically
16 determinable impairment that could reasonably give rise to symptoms asserted
17 suffered by a claimant, an ALJ must make a finding as to the credibility of the
18 claimant's statements about the symptoms and their functional effect.  Robbins,
19 466 F.3d at 883 (citations omitted).  Where the record includes objective medical
20 evidence that the claimant suffers from an impairment that could reasonably
21 produce the symptoms of which the claimant complains, an adverse credibility
22 finding must be based on clear and convincing reasons.  Carmickle v.
23 Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir.
24 2008) (citations omitted).  The only time this standard does not apply is when
25 there is affirmative evidence of malingering.  Id.  The ALJ's credibility findings
26 "must be sufficiently specific to allow a reviewing court to conclude the ALJ
27 rejected the claimant's testimony on permissible grounds and did not arbitrarily
28 ///

1  discredit the claimant's testimony." <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th
2  Cir. 2004).

3      To find the claimant not credible, an ALJ must rely either on reasons
4  unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal
5  contradictions in the testimony, or conflicts between the claimant's testimony and
6  the claimant's conduct (*e.g.*, daily activities, work record, unexplained or
7  inadequately explained failure to seek treatment or to follow prescribed course of
8  treatment). <u>Orn</u>, 495 F.3d at 636; <u>Robbins</u>, 466 F.3d at 883; <u>Burch</u>, 400 F.3d at
9  680-81; Social Security Ruling 96-7p.[6]  Although an ALJ may not disregard such
10  claimant's testimony solely because it is not substantiated affirmatively by
11  objective medical evidence, the lack of medical evidence is a factor that the ALJ
12  can consider in his credibility assessment. <u>Burch</u>, 400 F.3d at 681.

13          **2.    Analysis**

14      Plaintiff contends that the ALJ inadequately evaluated the credibility of his
15  subjective complaints. (Plaintiff's Motion at 10-14). The Court finds no material
16  error in the ALJ's assessment of plaintiff's credibility.

17      First, the ALJ properly discounted the credibility of plaintiff's subjective
18  complaints as inconsistent with the conservative treatment plaintiff received for
19  his impairments. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ
20  properly considered, as part of credibility evaluation, treating physician's failure
21  to prescribe, and claimant's failure to request, medical treatment commensurate
22  with the "supposedly excruciating" pain alleged, and the "minimal, conservative
23  treatment") (citing <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 (9th Cir. 1991) (en

24  _____

25      [6]Social Security rulings are binding on the Administration. <u>See</u> 20 C.F.R. § 402.35(b)(1);
26  <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990) (citations omitted). Courts generally
    defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the Social
27  Security Act or regulations. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001)
    (citations omitted); <u>Paxton v. Secretary of Health and Human Services</u>, 856 F.2d 1352, 1356 (9th
28  Cir. 1988) (citations omitted).

1   banc)); see Fair, 885 F.2d at 604 (ALJ permissibly considered discrepancies

2   between the claimant's allegations of "persistent and increasingly severe pain" and

3   the nature and extent of treatment obtained).  For example, as the ALJ noted, by

4   July 2010 (*i.e.*, approximately five months after plaintiff's February 2010 back

5   surgery) plaintiff reportedly had stopped taking all pain medication and Dr. Kropf

6   recommended that plaintiff stop using his back brace and begin physical therapy.

7   (AR 24, 460, 520).  In October 2010, Dr. Kropf prescribed Norco to be used only

8   "minimally" if pain increased, and recommended acupuncture.  (AR 24) (citing

9   Exhibit 18F at 8 [AR 459]).  By February 2011 plaintiff was treating his pain

10  mostly with prescription medication (*i.e.*, Advil and Norco "maybe 1-2 a day"), "a

11  lot of ice," chiropractic treatment, and acupuncture.  (AR 20, 24-25) (citing

12  Exhibit 18F at 7-9 [AR 458-60]).  While plaintiff suggests that his pain treatment

13  was more significant (Plaintiff's Motion at 13-14), this Court will not second-

14  guess the ALJ's reasonable determination to the contrary.  See Robbins, 466 F.3d

15  at 882 (citation omitted).

16        Second, the ALJ could properly discount the credibility of plaintiff's

17  subjective complaints due to inconsistencies between plaintiff's testimony and

18  conduct.  See Light v. Social Security Administration, 119 F.3d 789, 792 (9th

19  Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider

20  "inconsistencies either in [plaintiff's] testimony or between his testimony and his

21  conduct").  As the ALJ noted, when asked at the hearing if there was any

22  improvement in plaintiff's back condition after the February 2010 surgery,

23  plaintiff testified "not really."  (AR 48).  Less than a month after the surgery,

24  however, plaintiff had described his pain level as only "five on a [] scale of one to

25  ten."  (AR 338).  Moreover, Dr. Kropf recommended several times after the

26  surgery that plaintiff increase his physical activities and decrease use of assistive

27  devices (*i.e.*, walker and back brace).  (AR 23-24, 338, 460, 466, 520, 526).  In

28  addition, as the ALJ noted, at one point plaintiff had stopped taking any pain

14

1   medication "for a significant time," and again plaintiff's overall treatment

2   eventually consisted of referrals to physical therapy, chiropractic treatment,

3   acupuncture, and "relatively mild" prescription pain medication.  (AR 20, 24, 458-

4   60).  As plaintiff notes, he was administered trigger point injections at his cervical

5   spine three times over more than a year and a half – specifically, April 10, 2010,

6   October 17, 2011, and December 1, 2011.  (AR 24-25, 337, 472-75).  Nonetheless,

7   there is no record that plaintiff sought or was prescribed such treatment at any

8   other time, mush less on a regular basis.  See, e.g., Bunnell, 947 F.2d at 346 (In

9   assessing credibility ALJ may properly rely on plaintiff's unexplained failure to

10  request treatment consistent with alleged severity of subjective symptoms).

11       Third, to the extent the ALJ erroneously discredited plaintiff's testimony

12  regarding the severity of his carpal tunnel syndrome because plaintiff was not

13  wearing a wrist brace at the hearing – even though the brace was prescribed only

14  to be used at night – any error was harmless.  Specifically, plaintiff points to no

15  evidence that the numbness in his right hand resulted in any limitation beyond

16  those already accounted for in the ALJ's residual functional capacity assessment

17  which limited plaintiff to "frequent handling and fingering with the right upper

18  extremity."  (AR 18).  Moreover, the remaining reasons identified by the ALJ for

19  discounting the credibility of plaintiff's subjective symptom testimony are

20  supported by substantial evidence and any such error would not negate the validity

21  of the ALJ's ultimate credibility conclusion in this case.  See Molina, 674 F.3d at

22  1115 (citations omitted) (Where some reasons supporting an ALJ's credibility

23  analysis are found invalid, the error is harmless if (1) the remaining "valid"

24  reasons provide substantial evidence to support the ALJ's credibility conclusions,

25  and (2) "the error does not negate the validity of the ALJ's ultimate [credibility]

26  conclusion.") (quoting Batson v. Commissioner of Social Security Administration,

27  359 F.3d 1190, 1197 (9th Cir. 2004)) (citation and internal quotation marks

28  omitted).

1    Finally, the ALJ properly discounted plaintiff's credibility in part because

2    plaintiff's pain allegations were not fully corroborated by the objective medical

3    evidence.  See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot

4    be rejected on the sole ground that it is not fully corroborated by objective medical

5    evidence, the medical evidence is still a relevant factor in determining the severity

6    of the claimant's pain and its disabling effects.") (citation omitted).  For example,

7    as the ALJ noted and as discussed above, contrary to plaintiff's complaints of

8    disabling pain, plaintiff's post-surgery medical records reflect that his back

9    condition improved over time, and plaintiff had only mild pathology in his

10   cervical spine and a "healed fusion" in his lumbar spine.  (AR 22-25, 304-05, 315,

11   338, 365, 459-60, 466, 519-20, 526).  Again, the Court will not second guess the

12   ALJ's reasonable interpretation of this medical evidence which is supported by

13   substantial evidence in the record.

14        Accordingly, a remand or reversal on this basis is not warranted.

15   **V.    CONCLUSION**

16        For the foregoing reasons, the decision of the Commissioner of Social

17   Security is affirmed.

18        LET JUDGMENT BE ENTERED ACCORDINGLY.

19   DATED:   February 28, 2014

20                                    _____/s/_____

21                                    Honorable Jacqueline Chooljian
                                      UNITED STATES MAGISTRATE JUDGE
22

23

24

25

26

27

28

16